IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Penn Engineering & Manufacturing Corp., | : | |
| | : | |
| | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | No.:_____ |
| | : | |
| Pemco Hardware, Inc., Dongguan | : | |
| Fenggang Pemco Hardware Factory, | : | |
| and Shenzhen Pemco Fastening Systems | : | |
| Co., Ltd., | : | JURY TRIAL DEMANDED |
| | : | |
| Defendants. | : | |

## **COMPLAINT**

PennEngineering & Manufacturing Corp., a Pennsylvania corporation, by way of

Complaint against Pemco Hardware, Inc., Dongguan Fenggang Pemco Hardware Factory, and

Shenzhen Pemco Fastening Systems Co., Ltd., on knowledge as to PennEngineering &

Manufacturing Corp., and otherwise on information and belief, alleges as follows:

### **Nature of the Action**

1.      This is a civil action for patent infringement under 35 U.S.C. section 271;

trademark infringement, false designation of origin, counterfeiting and trademark dilution under

the trademark laws of the United States including 15 U.S.C. sections 1114, 1116, 1117, 1125(a)

and 1125(c); and common law trademark infringement and unfair competition.

**Jurisdiction**

2.      Subject matter jurisdiction over this action is proper in this court under 15 U.S.C.

section 1121, 35 U.S.C. section 271 and 28 U.S.C. sections 1331, 1338 and 1367(a), and over the

related state claims under the doctrine of supplemental jurisdiction.

**Venue**

3.      Venue is proper in this district under 28 U.S.C. section 1391 for the reasons set

forth below.

The Parties

4.      Plaintiff, PennEngineering & Manufacturing Corp., ("PennEngineering"), is a

Pennsylvania corporation having a place of business at 5190 Old Easton Road, Danboro,

Pennsylvania, 18196.

5.      On information and belief, defendant Pemco Hardware, Inc. ("Pemco

Hardware"), is a California corporation having a place of business at 1122 Clehorn Drive, Unit

E., Diamond Bar, California, 91765 and/or at 1933 West 11th Street, Unit F, Upland, California

91786.

6.      On information and belief, defendant Pemco Hardware has an operating

warehouse at 20676 Carrey Road, Suite A2, Walnut, California, 91789.

7.      On information and belief, defendant Shenzhen Pemco Fastening Systems Co.,

Ltd. ("Shenzhen") is a Chinese company having a place of business located at 5th Floor of 20th

Building, Quangpian Industrial Zone, Taoyuan Street, Xili Town, Nanshan District, Shenzhen

P.R. China 518000.

8.     On information and belief, Shenzhen has a manufacturing facility at 9th Building, Yidingfeng Industrial Park, 248# Wanfeng Middle Road, Shajing Town, Bao'An District Shenzhen, Guangdong, P.R. China.

9.     On information and belief, Shenshen also has a manufacturing facility at 6th Factory, ChengQui Industrial Park, SongYuanXi Zone, GuanLan Town, Bao'An District, Shenzhen, P.R. China.

10.    On information and belief, defendant Dongguan Fenggang Pemco Hardware Factory ("Dongguan Fenggang Pemco") is a Chinese company having a place of business located at 2th [sic] Floor of Building A, Jinpeng Industrial Park, #96 Jincheng Road, Jingfenghuang Industrial Zone, Fenggang Town, Dongguan City, Guangdong Prvince, P.R. China 523688.

11.    On information and belief, defendant Donguan Fenggang Pemco also trades as Donguan Fenggang Pemco Hardware Manufactory.

12.    On information and belief, Donguan Fengang Pemco Hardware Factory is an operating division or tradename for Shenzhen.

13.    On information and belief, Shenzhen, Dongguan Fenggang Pemco and Pemco Hardware are related companies.

14.    On information and belief, Pemco Hardware is the exclusive distributor in the United States of products manufactured by Shenzhen and/or Donguan Fenggang Pemco.

15.    Pemco Hardware, Dongguan Fenggang Pemco, and Shenzhen are collectively referred to herein as "Defendants".

## Statement of Facts Common to All Counts

16.     PennEngineering is a global leader in the industrial fastening solutions industry.

17.     PennEngineering was established in 1942 by K.A. Swanstrom. PennEngineering's first manufacturing facility consisted of only four fastener machines in a Doylestown, Pennsylvania garage.  Since then, PennEngineering has grown into a global industry leader.

18.     PennEngineering is now headquartered in Danboro, Pennsylvania.

### PennEngineering's Extensive Product Line

19.     PennEngineering designs and manufactures a wide variety of fasteners, components and fastener installation equipment for diverse industries, including electronics, computer, data/telecom, medical, automotive, marine, aerospace/aircraft, and general manufacturing.

20.     Since 1942, PennEngineering has been in the business of designing, manufacturing and selling a wide variety of fastening products including: nuts for sheet metal; studs and pins for sheet metal; standoffs for sheet metal; captive panel screws and hardware; sheet-to-sheet; cable tie-mounts and hooks for sheet metal; fasteners for mounting into printed circuit boards; miniature (micro-sized) fasteners; and, weld nuts.  A more complete and detailed listing of PennEngineering's product line is set forth in the Declaration of Leon Attarian ("Attarian Declaration) and Supporting Exhibits filed contemporaneously herewith in support of Plaintiff's Complaint and Plaintiff's Motion for Preliminary Injunction, all of which are incorporated herein by reference.

21.     Since first inventing a novel clinch fastener in 1943, PennEngineering has steadily expanded the type and variety of products in its portfolio.  A more complete description of PennEngineering's product line expansion is set forth in the Attarian Declaration.

22.     A true and correct copy of selected portions of PennEngineering's current products catalogue showing the above-described products is shown in exhibit 1.  All of these products are advertised, promoted and sold using one or more of PennEngineering's numerous trademarks and most are advertised, promoted and sold using the "PEM Family of Marks" defined below.

23.     Since 1942, PennEngineering has steadily grown its engineering and production capacity.  PennEngineering now has manufacturing and technical facilities in the United States, Europe, and Asia including Danboro, Pennsylvania; Winston-Salem, North Carolina; Galway, Ireland; Friedrichsdorf, Germany and Kunshan, China.

24.     Over the past 73 years, PennEngineering has manufactured and sold billions of fastener products.  For example, in 2015 alone, PennEngineering will manufacture and sell over *six billion* fasteners.

25.     In addition to the United States, PennEngineering's products are sold in more than 75 countries through an extensive network of engineering representatives and distributors in, for example, Australia, Austria, Brazil, Canada, China, Denmark, France, Finland, Germany, Hong Kong, India, Ireland, Israel, Italy, Japan, South Korea, Mexico, New Zealand, Norway, Portugal, Singapore, Spain, South Africa, Sweden, Switzerland, Taiwan, United Kingdom and the United States.

26.     In 2001, PennEngineering acquired Precision Steel Holdings Limited of Galway, Ireland, a manufacturer of turned screw machine parts.  The company now trades as

PennEngineering Fastening Technologies (Europe) Ltd.  This 110,000 square foot facility supplies screw machined, headed and formed products to a number of European authorized distributors.

27.     In 2013, PennEngineering created pennTool Group, which specializes in the design and manufacture of precision tooling for heading and screw machine operations.

28.     Since 1942, PennEngineering has grown steadily and now has about 1,700 employees globally and annual revenue in excess of 400 million dollars.

29.     Since 1942, PennEngineering has continuously invented new fastener products and improved on old fastener products as evidence by its extensive patent portfolio. PennEngineering spends more than $1,200,000 per year to design, develop, test and certify its new fastener products.  PennEngineering has been issued[1] more than 150 U.S. and foreign patents for its fastener products, fastener installation equipment, and methods of manufacturing. A true and correct list of PennEngineering's *active* U.S. and foreign patents is shown in exhibit 2.

**PennEngineering's Superior Product Quality**

30.     Over the past 73 years, PennEngineering has developed a reputation for designing, manufacturing and selling only the highest quality fastener products. PennEngineering exercises extensive quality control at its manufacturing plants and has a manufacturing strategy of defect prevention rather than defect detection.  PennEngineering uses statistical tools throughout its manufacturing processes to monitor the performance and assure effective quality control of each process step.  If a non-conforming situation arises, it is resolved immediately with the use of appropriate quality assurance tools.

---

[1] PennEngineering assigns all of its patent and trademark rights to a holding company, PEM Management, Inc., and is granted back an exclusive license under the patents and trademarks.

31.     A more complete and detailed description of PennEngineering's quality control program and certifications is set forth in the Supporting Exhibits and Attarian Declaration. These numerous quality approvals and certifications underscore PennEngineering's reputation for manufacturing high quality products.

**PennEngineering's Famous PEM Family of Marks**

32.     Since at least as early as 1946, PennEngineering has used the trademark PEM in commerce to advertise, promote and sell its fastener products and accessories, and to identify and distinguish its goods from the goods of other companies.  Sample advertisements showing use of the mark PEM from the 1960's are shown in exhibit 3.

33.     On June 19, 1962, PennEngineering was awarded U.S. Registration No. 732,947 ("the '947 Registration"), which grants PennEngineering the exclusive right to use the mark PEM, or any confusingly similar mark (colorable imitation), in connection with "drill bushings and self-clinching nuts, fasteners, studs and stand-offs", and in connection with related goods.

34.     A true and correct copy of the '947 Registration is shown in exhibit 4.

35.     The mark PEM was registered on the Principal Register without the need to claim secondary meaning.

36.      The '947 Registration became incontestable under the Lanham Act on October 25, 1984 when the U.S. Patent & Trademark Office accepted and acknowledged PennEngineering's Section 15 Affidavit.

37.     For the past 69 years, PennEngineering has continuously used and heavily promoted and advertised the mark PEM in numerous industries including: aerospace/aircraft; appliances; automobiles; compact electronics; consumer electronics; food service equipment; furniture/fixtures/signs; industrial equipment; lawn/garden equipment; lighting; marine/boating;

medical; military; recreational; telecom; trucks/trailers.

38.    Over the years, PennEngineering has adopted numerous additional marks for its

fastener products that incorporate the mark PEM.

39.    For example, PennEngineering advertises, promotes and sells its fastener products

using the federally-registered marks listed in Table 1:

**Table I**

| Mark | Registration Number | Registration Date | Incontestability Date | Goods & Services |
|---|---|---|---|---|
| PEM | 732,947 | 6/19/1962 | 10/25/1984 | Drill bushings and self-clinching nuts, fasteners, studs and stand-offs |
| PEM | 1,177,822 | 11/17/1981 | 8/3/1987 | Broaching-type captive fasteners-namely, broaching-type captive fasteners with internal threads, broaching-type captive standoffs with and without internal threads, broaching-type captive solder terminals, broaching-type captive studs, broaching-type captive panel fasteners and metallic inserts. |
| PEM | 1,403,759 | 8/5/1986 | 8/12/1991 | Metal fasteners |
| PEM | 2,758,505 | 9/2/2003 | 9/2/2009 | Panel fasteners, namely self-clinching, snap-in floating and hybrid panel fasteners |
| PEM | 889,244 | 4/14/1970 | 4/14/2010 | Self-clinching fasteners, self-locating weld fasteners, and self-clinching drill bushings |
| PEM | 1,043,967 | 7/20/1976 | 11/9/1981 | Presses for installing fasteners or the like and also for parts of said presses |
| PEM | 1,092,108 | 7/25/1983 | 5/30/2015 | Panel fastener assemblies and spring loaded plunger assemblies |

| | | | | |
|---|---|---|---|---|
| **PEM** | 1,113,034 | 2/13/1979 | 4/23/1984 | Electrical terminals and electrical grounding stand-offs |
| **PEM** | 4,331,371 | 5/7/2013 | n/a | Fasteners made of metal, namely, nuts, weld nuts, studs, pins, standoffs, rivets and inserts, cable-tie mounts and hooks for sheet metal; self-clinching panel fasteners made of metal or mostly of metal; panel fasteners and panel fastener assemblies made of metal or mostly of metal; sheet-metal fasteners made of metal; fasteners made of metal or mostly of metal for mounting into printed circuit boards; micro fasteners made of metal for use in the consumer electronics industry |
| PEMFLEX | 937,397 | 7/11/1972 | 7/11/2012 | Fasteners, i.e., nuts |
| PEMHEX | 781,236 | 12/8/1964 | 12/8/2004 | Fasteners |
| PEMSERT | 883,650 | 1/6/1970 | 1/6/2010 | Inserts |
| PEMSERTER | 1,365,248 | 10/15/1985 | 6/3/1991 | Power-operated presses for installing fastener |
| PEMSERTER MICRO-MATE | 1,433,571 | 3/24/1987 | 7/2/1992 | Non-powered hand presses for punching holes and installing fasteners for use in sheet metal |
| PEMSERTER and triangle composite | 3,567,528 | 1/27/2009 | 2/9/2015 | Power-operated presses for installing fasteners |
| PEM SP | 3,270,807 | 7/31/2007 | 8/5/2013 | Metal fasteners |
| PEM300 | 1,444,862 | 6/30/1987 | 10/20/1992 | Sheet Metal Fasteners |

| AUTOPEM | 4,296,186 | 2/26/2013 | n/a | Metal fasteners, namely, nuts, bolts, screws, rivets, standoffs, clinching fasteners; metal threaded fasteners |
| MICROPEM | 4,250,883 | 11/27/2012 | n/a | Metal fasteners, namely, nuts, bolts, screws, rivets, standoffs, clinching fasteners; metal threaded fasteners |
| AEROPEM | 4,298,838 | 3/5/2013 | n/a | Metal fasteners, namely, nuts, bolts, screws, rivets, standoffs, clinching fasteners; metal threaded fasteners |

40.     A true and correct copy of the Registration Certificate of each of the above-listed marks is attached in Exhibit 4.

41.     The date on which each of the above-listed Registrations became incontestable under the Lanham Act is also listed in Table I.

42.     PennEngineering also advertises, promotes and sells its fastener products using several common law trademarks for which federal registration is pending.  For example, PennEngineering owns federal trademark applications for the marks PEM SH, PEM SH and design, PEM VM and PEM SMPP.

43.     All of PennEngineering's registered and common law trademarks identified above are collectively referred to as the "PEM Family of Marks."

44.     Each of the federal registrations for the PEM Family of Marks is owned by PEM Management, Inc.  PennEngineering is the exclusive licensee of all rights in said marks and said federal registrations.

**PennEngineering's Additional Famous Trademarks**

45.     In addition to the PEM Family of Marks, PennEngineering owns more than 100 other federally-registered and common law marks including the marks listed in Table II:

**Table II**

| Mark | Registration Number | Registration Date | Incontestability Date | Goods & Services |
|---|---|---|---|---|
| The "Blue Locking Element Mark" | 1,449,260 | 7/28/1987 | 10/30/1992 | Self-clinching locking nuts |
| The "Shoulder Flare Mark" | 4,037,181 | 10/11/2011 | n/a | Metal threaded fasteners, namely, panel fasteners with heads of metal and panel fasteners with heads of metal and plastic |
| The "Pedestal Mark" | 4,293,597 | 2/19/2013 | n/a | Metal fasteners, namely, clinch fastener for mounting two sheets or panels in perpendicular orientation |
| SNAPTOP | 1,418,142 | 11/25/1986 | 4/2/1992 | Metal fasteners used to separate and hold printed circuit boards |
| SPOTFAST | 3,341,727 | 11/20/2007 | 9/30/2013 | Metal fasteners, namely, a clinch-attached stud for joining two metal sheets |
| REELFAST | 3,002,446 | 9/27/2005 | 11/8/2011 | Metal fasteners supplied on tape reels for surface mounting to circuit boards |

46.    A true and correct copy of the Registration Certificate of each of the above-listed marks is also attached in Exhibit 4.

47.    The date on which each of the above-listed Registrations became incontestable under the Lanham Act is also listed in Table II.

48.    All of PennEngineering's registered trademarks identified in Table II are collectively referred to as the "Six Other Marks."

49.    Each of the federal registrations for the Six Other Marks is owned by PEM Management, Inc.  PennEngineering is the exclusive licensee of all rights in said marks and said federal registrations.

**Advertising, Marketing and Promotion Of PennEngineering's Marks**

50.     Through PennEngineering's substantial marketing and advertising efforts, the PEM Family of Marks and Six Other Marks have become famous in the fastening solutions industry, and recognized throughout the United States as a trademark of PennEngineering.

51.     The PEM Family of Marks and Six Other Marks, and the extensive recognition and goodwill symbolized by the PEM Family of Marks and Six Other Marks, are extremely valuable assets of PennEngineering.

52.     The PEM Family of Marks and Six Other Marks represent PennEngineering's reputation as a producer of top quality fastener products and fastener installation equipment.

53.     Today, nearly all of PennEngineering's sales relates to fastener products and fastener installation equipment sold under the PEM Family of Marks.

54.     PennEngineering's fastener products and fastener installation equipment bearing the PEM Family of Marks and Six Other Marks are sold throughout the entire world through an extensive network of distributors in the U.S. and dozens of foreign countries.  PennEngineering currently has approximately 64 distributors in 47 countries.  A true and correct list of PennEngineering's current distributors is attached hereto as exhibit 13.

55.     PennEngineering's fastener products and fastener installation equipment bearing the PEM Family of Marks and Six Other Marks are also advertised, promoted and sold on its extensive interactive website.  True and correct sample pages from PennEngineering's website, *www.pemnet.com*, are shown in exhibit 5.  PennEngineering has operated this website, and promoted the PEM Family of Marks and Six Other Marks on this website, since at least as early as 1996.  True and correct sample screenshots from *www.pemnet.com* from 1996, 1999, 2000, 2002, 2005, and 2007 are attached hereto as exhibit 6.

56.     PennEngineering's fastener products and fastener installation equipment bearing the PEM Family of Marks and Six Other Marks are also advertised, promoted and sold at national and international trade shows including the following: Pacific Design & Manufacturing; FABTECH; Composites Europe; mtex; MIDEST; Fastener Expo; and, Manufacturing Indonesia. A true and correct list of trade shows at which PennEngineering has advertised and promoted products bearing the PEM Family of Marks and Six Other Marks is attached hereto as exhibit 7. Photographs of a typical PennEngineering trade show booth are also included in exhibit 7.

57.     PennEngineering's fastener products and fastener installation equipment bearing the PEM Family of Marks and Six Other Marks are also advertised, promoted and sold through numerous national and international trade journals including: Design News; Assembly; NASA Tech Briefs; Machine Design; Design World; Electronic Component News; Fabricator; Electronic Products; Thomas Register; Global Spec; Blech; BBR; Elektronik Automotive; Automobil Produktion; Industrie et Technologies; and Ingenieurs de l'Automobile.  A list of trade journals and publications in which PennEngineering has advertised and promoted the PEM Family of Marks and Six Other Marks in 2011, 2012, 2013 and 2014 is shown in exhibit 8.

58.     True and correct samples of PennEngineering's past national trade journal advertisements from 1978 through 2012 for the Unites States and Europe are attached hereto as exhibit 9.

59.     True and correct samples of PennEngineering's past national trade journal advertisements from 2013, 2014 and 2105 are attached hereto as exhibits 10, 11, and 12, respectively.

60.     Many of PennEngineering's distributors utilize PennEngineering's automated catalog on their website.  All authorized distributors are entitled to incorporate the same

marketing information on their website that appears on PennEngineering's website by linking the

distributor's website to PennEngineering's website.  This program allows the distributor to be

absolutely sure that they always have the most up to date information running on their websites.

61.     The program is one more step to make PennEngineering's customers aware that

the only way they can be assured of getting genuine PEM fasteners is to go to a PEM authorized

distributor.   Sample screen shots showing PennEngineering's Web linked to a distributor's

website are attached hereto as exhibit 14.

62.     PennEngineering's fastener products and fastener installation equipment bearing

the PEM Family of Marks and Other Marks are also advertised, promoted and sold through

independent technical representatives and its own direct sales/technical force.

63.     In Europe and Asia, PennEngineering's authorized distributors also act as

technical representatives who are also supported by PennEngineering's direct representatives.

64.     All totaled, PennEngineering currently spends more than $1,200,00 per year

advertising and promoting its PEM Family of Marks and Six Other Marks in the United States

and throughout the world.

65.     Over the past 10 years, PennEngineering has spent more than $10,000,000

advertising and promoting its PEM Family of Marks and Six Other Marks.

66.     Thus, through extensive and continuous advertising and promotion, the PEM

Family of Marks and Six Other Marks have become famous throughout the United States and

recognized to be the exclusive trademark of PennEngineering.

**Defendants' Trademark Infringement**

67.     Recently, PennEngineering discovered that Defendants are unlawfully using no

less than 13 of PennEngineering's trademarks (20 federal registrations) in connection with

14

the sale of the competing fastening products. Defendants are not affiliated in any way, are not a licensee of, and are not an authorized distributor of PennEngineering. Defendants are not a reseller of genuine PennEngineering products. Defendants have no other authorization, express or implied, to use PennEngineering's marks.

68.     Recently, PennEngineering discovered that Defendants are advertising and selling fastener products using the marks PEMCO, PEMCO HARDWARE INC., and PEMCO FASTENING SYSTEMS, which are confusingly similar to PennEngineering's trademark PEM and its PEM Family of Marks.

69.     For example, defendant Pemco Hardware is using the aforementioned marks on its Internet website to advertise and promote its fastener products. True and correct screenshots of Defendants' website www.pemcohardware.com are shown in exhibit 15.

70.     Pemco Hardware, Inc. is also using the mark DONGGUAN CITY FENGGANG PEMCO HARDWARE FACTORY on its U.S. website www.pemcohardware.com. The mark DONGGUAN CITY FENGGANG PEMCO HARDWARE FACTORY is also an active link to an associated Chinese website www.pemcomfg.com, which is owned by Dongguan Fenggang Pemco Hardware Factory ("Dongguan Fenggang Pemco"). True and correct screenshots of Dongguan Fenggang Pemco's website are attached hereto as exhibit 16. The homepage of this website www.pemcomfg.com prominently displays the mark PEMCO.

71.     Pemco Hardware is also using the mark PEMKU and SHENZHEN PEMCO FASTENING SYSTEM CO, LTD. on its U.S. website www.pemcohardware.com. The mark PEMKU is also an active link to an associated Chinese website www.pemku.com, which is owned by Defendant Shenzhen Pemco Fastening Systems Co., Ltd. ("Shenzhen"). True and correct screenshots of Shenzhen's website www.pemku.com are attached hereto as exhibit 17.

True and correct screenshots of Shenzhen's website www.pemcofastening.en.china.cn are attached hereto as exhibit 18.  It appears that Shenzen is the parent company of Dongguan Fenggang Pemco and Pemco Hardware or related in some manner.  For example, photos on Shenzhen's website www.pemku.com showing numerous boxes stamped with the mark PEMCO are attached hereto as exhibit 18.

72.     The marks PEMCO, PEMCO HARDWARE INC., PEMCO FASTENING SYSTEMS, DONGGUAN CITY FENGGANG PEMCO HARDWARE FACTORY, PEMKU and SHENZHEN PEMCO FASTENING SYSTEM CO, LTD. are collectively referred to hereinafter as the "PEMCO Infringing Marks".

73.     Recently, PennEngineering also discovered that defendant Pemco Hardware is advertising and selling fastener products using PennEngineering's Shoulder Flare Mark, Blue Locking Insert Mark, Pedestal Mark, and the marks SPOTFAST, SNAP-TOP and REELFAST (the "Six Other Infringing Marks").  For example, defendant Pemco Hardware is using the Six Other Infringing Marks on its Internet website to advertise and promote their fastener products. True and correct screenshots of selected pages of Defendants' website www.pemcohardware.com showing the Six Infringing Marks are shown in exhibits 19-24 and 29.  Together, the PEMCO Infringing Marks and the Six Other Infringing Marks are referred to simply as the Infringing Marks.

74.     On information and belief, Defendants are using the Infringing Marks on inferior products.  Defendants manufacturing facilities do not have the same industry certifications as PennEngineering's manufacturing facilities.  Defendants manufacturing process lacks the same quality-control procedures that are implemented by PennEngineering.  Therefore, Defendants are tarnishing PennEngineering's famous mark PEM, the PEM Family of Marks and Six Other

Marks.

75.     Table III illustrates how Defendants are using identical, counterfeit and colorable

imitations PennEngineering's marks:

**Table III**

| PennEngineering's Registered Mark | Registration Number(s) | Defendants' Infringing Mark(s) |
|---|---|---|
| PEM<br><br>PEM Family of Marks | 732,947<br>1,177,822<br>1,403,759<br>2,758,505<br>781,236<br>883,650<br>889,244<br>1,043,967<br>1,092,108<br>1,113,034<br>4,331,371<br>937,397<br>1,365,248<br>1,433,571<br>1,444,862<br>3,270,807<br>3,567,528<br>4,296,186<br>4,250,883<br>4,298,838 | PEMCO – Exhibit 15<br>PEMCO HARDWARE, INC – Exhibit 15<br>PEMCO FASTENING SYSTEMS – Exhibit 15<br>PEMKU – Exhibit 16<br>www.pemcohardware.com – Exhibit 15<br>SHENZHEN PEMCO FASTENING SYSTEM CO, LTD. – Exhibit 18<br>DONGGUAN CITY FENGGANG PEMCO HARDWARE FACTORY – Exhibit 16<br>MICROPEM – Exhibit 26 |
| The "Shoulder Flare Mark" | 4,037,181 | <br><br>Exhibit 19<br>Used on PK11, PK12 panel fastener |
| The "Blue Locking Element Mark" | 1,449,260 | <br><br>Exhibit 20<br>Used on PL and PLC hex nylon-inserted nuts |

| The "Pedestal Mark" | 4,293,597 | <br>Exhibit 21<br>Used on Type RA and RAS steel threaded right angle fastener |
|---|---|---|
| SPOTFAST | 3,341,727 | SPOTFAST – used on Type SF fasteners for joining two metal sheets<br>Exhibit 22 |
| SNAPTOP | 1,418,142 | SNAP-TOP – used on PK-SSC standoffs<br>Exhibit 23 |
| REELFAST | 3,002,446 | REELFAST – used on SMT panel fasteners<br>Exhibit 29 |

76.     PennEngineering and Defendants are direct competitors in the fastener industry. For example, PennEngineering and Defendants manufacture and sell many of the same types of fasteners.  True and correct screenshots of the "products" page of Pemco Hardware's website are shown in exhibit 15.

77.     By comparison to the fastener products offered by PennEngineering as described above, Pemco Hardware also sells self-clinching nuts, self-clinching standoffs, pins and bushes, inserts for plastic, self-clinching studs, panel fastener assemblies, spring-loaded plungers, and rivet nuts.

78.     Both PennEngineering and Defendants have Internet websites on which their respective goods are advertised and promoted.  These websites are examined by the same industrial customers.

**Defendants' Patent Infringement**

79.     PennEngineering also recently discovered that Defendants are making, using,
selling, offering for sale in the United States and/or importing into the United States fastener
products that infringe several of its U.S. patents.

80.     The following Table IV identifies PennEngineering's patent and Defendants'
corresponding infringing product:

**Table IV**

| Patent No. | Pemco Hardware Product Name | Exhibit |
|---|---|---|
| 7,374,381 | Type SF Spotfast Fasteners | 25 |
| 8,297,899 | Type T microPEM Tackpin Fasteners | 26 |
| D461,705 | Type TDO Self Clinching Cable Tie Hooks | 27 |
| 5,810,501 | RAA Aluminum Self-Taping Right Angle Fastener | 28 |
| 7,213,321 | Reelfast SMT Fastener | 29 |

81.     Each of the above-listed patents was duly issued by the U.S. Patent Office and is
active and in force.  Each of the above-listed patents is owned by assignment by PEM
Management, Inc.  PennEngineering is the exclusive licensee of all rights in said patents.

82.     PennEngineering spends more than $350,000 per year to prosecute and maintain
all of the patents and trademarks in its intellectual property portfolio.

**Infringement of U.S. Patent No. 7,374,381**

83.     Defendants' products identified as Type SF and Type SFP SpotFast Fasteners for
Joining of Two Metal Sheets indirectly infringe U.S. Patent No. 7,374,381 ("the '381 Patent")
under 35 U.S.C. § 271(b) and (c).  Defendants' Type SF and Type SFP fasteners are direct

"knock offs" of PennEngineering's double flush clinch stud.  A side-by-side comparison of Defendants' infringing product and a drawing of a preferred embodiment of the invention from the '381 Patent is shown in Exhibit 25.

84.    Exhibit 25 also shows the structure of Defendants' infringing fastener that is especially made or especially adapted for use in an assembly claimed in the '381 Patent.

85.    The advertisement in Exhibit 25 shows Defendants' Type SF and Type SFP fasteners connecting two metal sheets and shows how Defendants actively induce customers to connect two metal sheets with Defendants' Type SF and Type SFP fasteners.

**Infringement of U.S. Patent No. 8,297,899**

86.    Defendants' product identified as "Type T$^{TM}$ microPEM$^®$ TackPin$^{TM}$ Fasteners" not only directly infringes U.S. Patent No. 8,297,899 ("the '899 Patent") under 35 U.S.C. § 271(a), but is a blatant "knock off" of PennEngineering's patented clinch pin fastener.  A side-by-side comparison of Defendants' infringing product and a drawing of a preferred embodiment of the invention from the '899 Patent is shown in Exhibit 26.

87.    Exhibit 26 also shows the structure of Defendants' infringing product that satisfies each of the elements of claim 1 of the '899 Patent.

88.    Defendants' intentional infringement is further evidenced by the fact that Defendants are using two of PennEngineering's trademarks, microPEM$^®$ and TackPin$^{TM}$ to advertise the infringing product.

**Infringement of U.S. Patent No. D461,705**

89.    Defendants' product identified as "Type TDO Self-Clinching Cable-Tie Hook" not only directly infringes U.S. Patent No. D461,705 ("the '705 Patent") under 35 U.S.C. § 271(a), but is a blatant "knock off" of PennEngineering's patented sheet metal cable hook.  A

side-by-side comparison of Defendants' infringing product and a patent drawing of a preferred embodiment of the invention from the '705 Patent is shown in Exhibit 27.

90.     Exhibit 27 also shows the structure of Defendants' infringing product that satisfies each of the elements of claim 1.

### Infringement of U.S. Patent No. 5,810,501

91.     Defendants' product identified as Type RAA – Aluminum Self-Tapping Right Angle Fastener not only directly infringes U.S. Patent No. 5,810,501 ("the '501 Patent") under 35 U.S.C. § 271(a), but is also a blatant "knock off" of PennEngineering's patented right angle fastener.  A side-by-side comparison of Defendants' infringing product and a drawing of a preferred embodiment of the invention from the '501 Patent is shown in Exhibit 28.

92.     Exhibit 28 also shows the structure of Defendants' infringing product that satisfies each of the elements of claim 1.

### Infringement of U.S. Patent No. 7,213,321

93.     Defendants' product identified as REELFAST® SMT Panel Fastener not only directly infringes U.S. Patent No. 7,213,321 ("the "321 Patent") under 35 U.S.C. § 271(a), but is a blatant "knock off" of PennEngineering's REELFAST® product.  A side-by-side comparison of Defendants' infringing product and a drawing of a preferred embodiment of the invention from the '321 Patent is shown in Exhibit 29.

94.     Exhibit 29 also shows the structure of Defendants' infringing product that satisfies each of the elements of claim 1.  This comparison leaves no doubt that Defendants' SMT Panel Fastener infringes the '321 Patent.  In fact, the screenshot of Defendants' website in exhibit 29 shows that the SMT Panel Fastener is "patented."  However, Defendants neglect to state that the product is patented *by PennEngineering*, not Defendants.  To add insult to injury,

exhibit 29 also shows that Defendants are using PennEngineering's registered trademark REELFAST to advertise Defendants' infringing product.

95.     Since the 1940's, PennEngineering's trademarks and patented products have been well known and widely recognized in many industries including the electronics, computer, data/telecom, medical, automotive, marine, aerospace/aircraft, and general manufacturing industries.

96.     PennEngineering's name, reputation and product line are its most valuable assets and are critical to its continued success.

97.     PennEngineering spends more than $375,000 annually to procure its federal and international trademarks and patents.

98.     Defendants are intentionally using counterfeits and/or colorable imitations of PennEngineering's marks and selling "knock-offs" of PennEngineering's patented products to trade off the goodwill of PennEngineering.

99.     Defendants seek to profit from the well-established reputation of PennEngineering.

100.     PennEngineering has sustained irreparable harm to its business, reputation, and goodwill, and, unless Defendants are enjoined and restrained by this court, Defendants will continue in the activities alleged herein and as a result thereof, PennEngineering will continue to sustain irreparable harm to its business, reputation and goodwill.

101.     PennEngineering has no adequate remedy at law.  The damage to PennEngineering's reputation, distinctive quality of its trademarks, and patented product designs is irreparable and not fully compensable by money damages.

102.    Defendants, by their unfair and unlawful use of the Infringing Marks, have made profits to which they are not entitled in law or in equity.

103.    Defendants' acts have been willful and/or with a wanton and reckless disregard for PennEngineering's rights.

**Count I – U.S. Trademark Reg. No. 732,947**
**Federal Trademark Infringement Under The Lanham Act**

104.    The allegations of the proceeding paragraphs are repeated and incorporated herein by reference.

105.    Defendants' acts constitute trademark infringement under Section 32 of the Lanham Act. 15 U.S.C. § 1114.

106.    PennEngineering's U.S. Trademark Reg. No. 732,947 for the mark PEM entitles it to a presumption of ownership, validity and exclusive rights to use the mark PEM in connection with the goods / services named in the registration.

107.    Defendants have used and are using a reproduction, counterfeit, copy, or colorable imitation of the mark PEM on or in connection with the sale, offering for sale, distribution, or advertising of fastener products.

108.    Defendants' unauthorized use of the PEMCO Infringing Marks (collectively and/or individually) in connection with selling, offering for sale, distributing and advertising their fastener products is likely to cause confusion, or to cause mistake, or to deceive the public regarding the source of their fastener products.

**Count II – U.S. Trademark Reg. No. 1,177,822**
**Federal Trademark Infringement Under The Lanham Act**

109.    The allegations of the proceeding paragraphs are repeated and incorporated herein by reference.

110.     Defendants' acts constitute trademark infringement under Section 32 of the Lanham Act. 15 U.S.C. § 1114.

111.     PennEngineering's U.S. Trademark Reg. No. 1,177,822 for the mark PEM entitles it to a presumption of ownership, validity and exclusive rights to use the mark PEM in connection with the goods / services named in the registration.

112.     Defendants have used and are using a reproduction, counterfeit, copy, or colorable imitation of the mark PEM on or in connection with the sale, offering for sale, distribution, or advertising of fastener products.

113.      Defendants' unauthorized use of the PEMCO Infringing Marks (collectively and/or individually) in connection with selling, offering for sale, distributing and advertising their fastener products is likely to cause confusion, or to cause mistake, or to deceive the public regarding the source of their fastener products.

## Count III – U.S. Trademark Reg. No. 1,403,759
## Federal Trademark Infringement Under The Lanham Act

114.     The allegations of the proceeding paragraphs are repeated and incorporated herein by reference.

115.     Defendants' acts constitute trademark infringement under Section 32 of the Lanham Act. 15 U.S.C. § 1114.

116.     PennEngineering's U.S. Trademark Reg. No. 1,403,759 for the mark PEM entitles it to a presumption of ownership, validity and exclusive rights to use the mark PEM in connection with the goods / services named in the registration.

117.     Defendants have used and are using a reproduction, counterfeit, copy, or colorable imitation of the mark PEM on or in connection with the sale, offering for sale, distribution, or advertising of fastener products.

118.     Defendants' unauthorized use of the PEMCO Infringing Marks (collectively and/or individually) in connection with selling, offering for sale, distributing and advertising their fastener products is likely to cause confusion, or to cause mistake, or to deceive the public regarding the source of their fastener products.

### Count IV – U.S. Trademark Reg. No. 2,758,505
### Federal Trademark Infringement Under The Lanham Act

119.     The allegations of the proceeding paragraphs are repeated and incorporated herein by reference.

120.     Defendants' acts constitute trademark infringement under Section 32 of the Lanham Act. 15 U.S.C. § 1114.

121.     PennEngineering's U.S. Trademark Reg. No. 2,758,505 for the mark PEM entitles it to a presumption of ownership, validity and exclusive rights to use the mark PEM in connection with the goods / services named in the registration.

122.     Defendants have used and are using a reproduction, counterfeit, copy, or colorable imitation of the mark PEM on or in connection with the sale, offering for sale, distribution, or advertising of fastener products.

123.     Defendants' unauthorized use of the PEMCO Infringing Marks (collectively and/or individually) in connection with selling, offering for sale, distributing and advertising their fastener products is likely to cause confusion, or to cause mistake, or to deceive the public regarding the source of their fastener products.

### Count V – PEM Family of Marks
### Federal Trademark Infringement Under The Lanham Act

124.     The allegations of the proceeding paragraphs are repeated and incorporated herein by reference.

125.     Defendants' acts constitute trademark infringement under Section 32 of the Lanham Act. 15 U.S.C. § 1114.

126.     The U.S. Registrations identified in Table I for the PEM Family of Marks entitle PennEngineering to a presumption of ownership, validity and exclusive rights to use the PEM Family of Marks in connection with the goods / services named in the registrations.

127.     Defendants have used and are using a reproduction, counterfeit, copy, or colorable imitation of the PEM Family of Marks on or in connection with the sale, offering for sale, distribution, or advertising of fastener products.

128.     Defendants' unauthorized use of the PEMCO Infringing Marks (collectively and/or individually) in connection with selling, offering for sale, distributing and advertising their fastener products is likely to cause confusion, or to cause mistake, or to deceive the public regarding the source of their fastener products.

## Count VI – U.S. Trademark Reg. No. 4,037,181
## Federal Trademark Infringement Under The Lanham Act

129.     The allegations of the proceeding paragraphs are repeated and incorporated herein by reference.

130.     Defendants' acts constitute trademark infringement under Section 32 of the Lanham Act. 15 U.S.C. § 1114.

131.     PennEngineering's U.S. Trademark Reg. No. 4,037,181 for the Shoulder Flare Mark entitles it to a presumption of ownership, validity and exclusive rights to use the Shoulder Flare Mark in connection with the goods / services named in the registration.

132.     Defendants have used and are using a reproduction, counterfeit, copy, or colorable imitation of the Shoulder Flare Mark on or in connection with the sale, offering for sale, distribution, or advertising of fastener products.

133.     Defendants' unauthorized commercial use of the Shoulder Flare Mark in connection with selling, offering for sale, distributing and advertising their fastener products, including their Type PK11 and PK12 panel fastener assembly, is likely to cause confusion, or to cause mistake, or to deceive the public regarding the source of their fastener products.

### Count VII – U.S. Trademark Reg. No. 1,499,260
### Federal Trademark Infringement Under The Lanham Act

134.     The allegations of the proceeding paragraphs are repeated and incorporated herein by reference.

135.     Defendants' acts constitute trademark infringement under Section 32 of the Lanham Act. 15 U.S.C. § 1114.

136.     PennEngineering's U.S. Trademark Reg. No. 1,499,260 for the Blue Locking Element Mark entitles it to a presumption of ownership, validity and exclusive rights to use the Blue Locking Element Mark in connection with the goods / services named in the registration.

137.     Defendants have used and are using a reproduction, counterfeit, copy, or colorable imitation of the Blue Locking Element Mark on or in connection with the sale, offering for sale, distribution, or advertising of fastener products.

138.     Defendants' unauthorized commercial use of the Blue Locking Element Mark in connection with selling, offering for sale, distributing and advertising their fastener products, including their Type PL and PLC hex nylon-inserted, self-locking nuts, is likely to cause confusion, or to cause mistake, or to deceive the public regarding the source of their fastener products.

**Count VIII – U.S. Trademark Reg. No. 4,293,597**
**Federal Trademark Infringement Under The Lanham Act**

139.     The allegations of the proceeding paragraphs are repeated and incorporated

herein by reference.

140.     Defendants' acts constitute trademark infringement under Section 32 of the

Lanham Act. 15 U.S.C. § 1114.  PennEngineering's U.S. Trademark Reg. No. 4,293,597 for the

Pedestal Mark entitles it to a presumption of ownership, validity and exclusive rights to use the

Pedestal Mark in connection with the goods / services named in the registration.

141.     Defendants have used and are using a reproduction, counterfeit, copy, or colorable

imitation of the Pedestal Mark on or in connection with the sale, offering for sale, distribution, or

advertising of fastener products.

142.     Defendants' unauthorized use of the Pedestal Mark in connection with selling,

offering for sale, distributing and advertising their fastener products, including their Type RA

and Type RAS steel threaded right angle fastener, is likely to cause confusion, or to cause

mistake, or to deceive the public regarding the source of their fastener products.

**Count IX – U.S. Trademark Reg. No. 1,418,142**
**Federal Trademark Infringement Under The Lanham Act**

143.     The allegations of the proceeding paragraphs are repeated and incorporated

herein by reference.

144.     Defendants' acts constitute trademark infringement under Section 32 of the

Lanham Act. 15 U.S.C. § 1114.

145.     PennEngineering's U.S. Trademark Reg. No. 1,418,142 for the mark SNAPTOP

entitles it to a presumption of ownership, validity and exclusive rights to use the mark

SNAPTOP in connection with the goods / services named in the registration.

146.    Defendants have used and are using a reproduction, counterfeit, copy, or colorable imitation of the mark SNAPTOP on or in connection with the sale, offering for sale, distribution, or advertising of fastener products.

147.    Defendants' unauthorized use of the Mark SNAPTOP in connection with selling, offering for sale, distributing and advertising their fastener products, including their Type PK-SSC standoffs, is likely to cause confusion, or to cause mistake, or to deceive the public regarding the source of their fastener products.

**Count X – U.S. Trademark Reg. No. 3,341,727**
**Federal Trademark Infringement Under The Lanham Act**

148.    The allegations of the proceeding paragraphs are repeated and incorporated herein by reference.

149.    Defendants' acts constitute trademark infringement under Section 32 of the Lanham Act. 15 U.S.C. § 1114.

150.    PennEngineering's U.S. Trademark Reg. No. 3,341,727 for the mark SPOTFAST entitles it to a presumption of ownership, validity and exclusive rights to use the mark SPOTFAST in connection with the goods / services named in the registration.

151.    Defendants have used and are using a reproduction, counterfeit, copy, or colorable imitation of the mark SPOTFAST on or in connection with the sale, offering for sale, distribution, or advertising of fastener products.

152.    Defendants' unauthorized use of the mark SPOTFAST in connection with selling, offering for sale, distributing and advertising their fastener products, including their Type SF fasteners, is likely to cause confusion, or to cause mistake, or to deceive the public regarding the source of their fastener products.

## Count XI – U.S. Trademark Reg. No. 3,002,446
## Federal Trademark Infringement Under The Lanham Act

153.     The allegations of the proceeding paragraphs are repeated and incorporated

herein by reference.

154.     Defendants' acts constitute trademark infringement under Section 32 of the

Lanham Act. 15 U.S.C. § 1114.

155.     PennEngineering's U.S. Trademark Reg. No. 3,002,446 for the mark REELFAST

entitles it to a presumption of ownership, validity and exclusive rights to use the mark

REELFAST in connection with the goods / services named in the registration.

156.     Defendants have used and are using a reproduction, counterfeit, copy, or colorable

imitation of the mark REELFAST on or in connection with the sale, offering for sale,

distribution, or advertising of fastener products.

157.     Defendants' unauthorized use of the mark REELFAST in connection with

selling, offering for sale, distributing and advertising their fastener products, including their PK-

SSC standoffs, is likely to cause confusion, or to cause mistake, or to deceive the public

regarding the source of their fastener products.

## Count XII - PEM
## False Designation of Origin Under The Lanham Act

158.     The allegations of the proceeding paragraphs are repeated and incorporated herein

by reference.

159.     Defendants' acts violate Section 43(a)(1)(A) of the Lanham Act. 15 U.S.C. §

1125(a)(1)(A).

160.    Defendants have used and are using a copy, variation, simulation or colorable imitation of the mark PEM in connection with Defendants' offering and sale of fastener products with full knowledge of the long and extensive prior use of the mark PEM by PennEngineering.

161.    Defendants' unauthorized use of the PEMCO Infringing Marks (collectively and/or individually) in connection with selling, offering for sale, distributing and advertising their fastener products is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendants with PennEngineering, or as to the origin, sponsorship, or approval of Defendants' goods by PennEngineering.

162.    Defendants' actions constitute a false designation of origin, a false description of goods and/or services, and a false representation that Defendants' goods and/or services are sponsored, endorsed, licensed, authorized by, affiliated with, or connected with PennEngineering.

## Count XIII – PEM Family of Marks
### False Designation of Origin Under The Lanham Act

163.    The allegations of the proceeding paragraphs are repeated and incorporated herein by reference.

164.    Defendants' acts violate Section 43(a)(1)(A) of the Lanham Act. 15 U.S.C. § 1125(a)(1)(A).

165.    Defendants have used and are using a copy, variation, simulation or colorable imitation of the PEM Family of Marks in connection with Defendants' offering and sale of fastener products with full knowledge of the long and extensive prior use of the PEM Family of Marks by PennEngineering.

166.    Defendants' unauthorized use of the PEMCO Infringing Marks (collectively and/or individually) in connection with selling, offering for sale, distributing and advertising

their fastener products is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendants with PennEngineering, or as to the origin, sponsorship, or approval of Defendants' goods by PennEngineering.

167.    Defendants' actions constitute a false designation of origin, a false description of goods and/or services, and a false representation that Defendants' goods and/or services are sponsored, endorsed, licensed, authorized by, affiliated with, or connected with PennEngineering.

**Count XIV – Shoulder Flare Mark**
**False Designation of Origin Under The Lanham Act**

168.    The allegations of the proceeding paragraphs are repeated and incorporated herein by reference.

169.    Defendants' acts violate Section 43(a)(1)(A) of the Lanham Act. 15 U.S.C. § 1125(a)(1)(A).

170.    Defendants have used and are using a copy, variation, simulation or colorable imitation of the Shoulder Flare Mark in connection with Defendants' offering and sale of fastener products with full knowledge of the long and extensive prior use of the Shoulder Flare Mark by PennEngineering.

171.    Defendants' unauthorized use of the Shoulder Flare Mark in connection with selling, offering for sale, distributing and advertising their fastener products, including their Type PK11 and PK12 panel fastener assembly, is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendants with PennEngineering, or as to the origin, sponsorship, or approval of Defendants' goods by PennEngineering.

172.    Defendants' actions constitute a false designation of origin, a false description of goods and/or services, and a false representation that Defendants' goods and/or services are

sponsored, endorsed, licensed, authorized by, affiliated with, or connected with

PennEngineering.

### Count XV – Blue Locking Element Mark
### False Designation of Origin Under The Lanham Act

173.    The allegations of the proceeding paragraphs are repeated and incorporated herein

by reference.

174.    Defendants' acts violate Section 43(a)(1)(A) of the Lanham Act. 15 U.S.C. §

1125(a)(1)(A).

175.    Defendants have used and are using a copy, variation, simulation or colorable

imitation of the Blue Locking Element Mark in connection with Defendants' offering and sale of

fastener products with full knowledge of the long and extensive prior use of the Blue Locking

Element Mark by PennEngineering.

176.    Defendants' unauthorized use of the Blue Locking Element Mark in connection

with selling, offering for sale, distributing and advertising their fastener products, including their

Type PL and PLC hex nylon-inserted, self-locking nuts, is likely to cause confusion, or to cause

mistake, or to deceive as to the affiliation, connection, or association of Defendants with

PennEngineering, or as to the origin, sponsorship, or approval of Defendants' goods by

PennEngineering.

177.    Defendants' actions constitute a false designation of origin, a false description of

goods and/or services, and a false representation that Defendants' goods and/or services are

sponsored, endorsed, licensed, authorized by, affiliated with, or connected with

PennEngineering.

## Count XVI – Pedestal Mark
## False Designation of Origin Under The Lanham Act

178.     The allegations of the proceeding paragraphs are repeated and incorporated herein by reference.

179.     Defendants' acts violate Section 43(a)(1)(A) of the Lanham Act. 15 U.S.C. § 1125(a)(1)(A).

180.     Defendants have used and are using a copy, variation, simulation or colorable imitation of the Pedestal Mark in connection with Defendants' offering and sale of fastener products with full knowledge of the long and extensive prior use of the Blue Pedestal Mark by PennEngineering.

181.     Defendants' unauthorized use of the Pedestal Mark in connection with selling, offering for sale, distributing and advertising their fastener products, including their Type RA and Type RAS steel threaded right angle fastener, is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendants with PennEngineering, or as to the origin, sponsorship, or approval of Defendants' goods by PennEngineering.

182.     Defendants' actions constitute a false designation of origin, a false description of goods and/or services, and a false representation that Defendants' goods and/or services are sponsored, endorsed, licensed, authorized by, affiliated with, or connected with PennEngineering.

## Count XVII – SNAPTOP
## False Designation of Origin Under The Lanham Act

183.     The allegations of the proceeding paragraphs are repeated and incorporated herein by reference.

184.    Defendants' acts violate Section 43(a)(1)(A) of the Lanham Act. 15 U.S.C. § 1125(a)(1)(A).

185.    Defendants have used and are using a copy, variation, simulation or colorable imitation of the mark SNAPTOP in connection with Defendants' offering and sale of fastener products with full knowledge of the long and extensive prior use of the SNAPTOP by PennEngineering.

186.    Defendants' unauthorized use of the mark SNAP-TOP in connection with selling, offering for sale, distributing and advertising their fastener products, including their Type PK-SSC standoffs, is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendants with PennEngineering, or as to the origin, sponsorship, or approval of Defendants' goods by PennEngineering.

187.    Defendants' actions constitute a false designation of origin, a false description of goods and/or services, and a false representation that Defendants' goods and/or services are sponsored, endorsed, licensed, authorized by, affiliated with, or connected with PennEngineering.

### Count XVIII – SPOTFAST
### False Designation of Origin Under The Lanham Act

188.    The allegations of the proceeding paragraphs are repeated and incorporated herein by reference.

189.    Defendants' acts violate Section 43(a)(1)(A) of the Lanham Act. 15 U.S.C. § 1125(a)(1)(A).

190.    Defendants have used and are using a copy, variation, simulation or colorable imitation of the mark SPOTFAST in connection with Defendants' offering and sale of fastener

products with full knowledge of the long and extensive prior use of the mark SPOTFAST by PennEngineering.

191.    Defendants' unauthorized use of the mark SPOTFAST in connection with selling, offering for sale, distributing and advertising their fastener products, including their Type SF fasteners, is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendants with PennEngineering, or as to the origin, sponsorship, or approval of Defendants' goods by PennEngineering.

192.    Defendants' actions constitute a false designation of origin, a false description of goods and/or services, and a false representation that Defendants' goods and/or services are sponsored, endorsed, licensed, authorized by, affiliated with, or connected with PennEngineering.

### Count XIX – REELFAST
### False Designation of Origin Under The Lanham Act

193.    The allegations of the proceeding paragraphs are repeated and incorporated herein by reference.

194.    Defendants' acts violate Section 43(a)(1)(A) of the Lanham Act. 15 U.S.C. § 1125(a)(1)(A).

195.    Defendants have used and are using a copy, variation, simulation or colorable imitation of the mark REELFAST in connection with Defendants' offering and sale of fastener products with full knowledge of the long and extensive prior use of the mark REELFAST by PennEngineering.

196.    Defendants' unauthorized use of the mark REELFAST in connection with selling, offering for sale, distributing and advertising their fastener products, including their Type SMT panel fastener, is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation,

connection, or association of Defendants with PennEngineering, or as to the origin, sponsorship, or approval of Defendants' goods by PennEngineering.

197.    Defendants' actions constitute a false designation of origin, a false description of goods and/or services, and a false representation that Defendants' goods and/or services are sponsored, endorsed, licensed, authorized by, affiliated with, or connected with PennEngineering.

## Count XX - PEM
### Trademark Dilution Under the Lanham Act

198.    The allegations of the proceeding paragraphs are repeated and incorporated herein by reference.

199.    Defendants' acts constitute trademark dilution under section 43(c) of the Lanham Act. 15 U.S.C. § 1125(c).

200.    PennEngineering's mark PEM is famous throughout the United States.

201.    Defendants' commercial use of the PEMCO Infringing Marks in connection with fastener products began after PennEngineering's mark PEM became famous and dilutes the distinctive quality of PennEngineering's famous mark PEM.

202.    Defendants' commercial use of the PEMCO Infringing Marks has caused dilution by lessening the capacity of the mark PEM to identify and distinguish PennEngineering's goods.

203.    Defendants' use of the PEMCO Infringing Marks on several different goods has caused PennEngineering's mark PEM to lose its unique and distinctive ability to act as a source identifier.

204.    Upon information and belief, Defendants' products have inferior quality compared to PennEngineering's products.

205.    On information and belief, Defendants' manufacturing process is inferior to PennEngineering's manufacturing process.

206.    Defendants' use of the PEMCO Infringing Marks on inferior products has caused dilution by tarnishing the mark PEM.

**Count XXI – PEM Family of Marks**
**Trademark Dilution Under the Lanham Act**

207.    The allegations of the proceeding paragraphs are repeated and incorporated herein by reference.

208.    Defendants' acts constitute trademark dilution under section 43(c) of the Lanham Act. 15 U.S.C. § 1125(c).

209.    PennEngineering's PEM Family of Marks is famous throughout United States.

210.    Defendants' commercial use of the PEMCO Infringing Marks in connection with fastener products began after PennEngineering's PEM Family of Marks became famous and dilutes the distinctive quality of PennEngineering's famous PEM Family of Marks.

211.    Defendants' commercial use of the PEMCO Infringing Marks has caused dilution by lessening the capacity of the PEM Family of Marks to identify and distinguish PennEngineering's goods.

212.    Defendants' use of the PEMCO Infringing Marks on several different goods has caused PennEngineering's PEM Family of Marks to lose its unique and distinctive ability to act as a source identifier.

213.    Upon information and belief, Defendants' products have inferior quality compared to PennEngineering's products.

214.    On information and belief, Defendants' manufacturing process is inferior to PennEngineering's manufacturing process.

215. Defendants' use of the PEMCO Infringing Marks on inferior products has caused dilution by tarnishing the mark PEM Family of Marks.

## Count XXII - PEM
## Common Law Trademark Infringement and Unfair Competition

216. The allegations of the proceeding paragraphs are repeated and incorporated herein by reference.

217. Defendants' use of the PEMCO Infringing Marks in connection with their fastener products constitutes common law trademark infringement of PennEngineering's mark PEM and common law unfair competition.

218. Defendants' use of the PEMCO Infringing Marks in connection with their fastener products is likely to cause confusion among consumers as to source, sponsorship or affiliation of Defendants' goods.

219. Defendants' use of the PEMCO Infringing Marks is being done with the intent, purpose and effect of procuring an unfair competitive advantage over PennEngineering by misappropriating the valuable goodwill developed by PennEngineering in its mark PEM.

## Count XXIII – PEM Family of Marks
## Common Law Trademark Infringement and Unfair Competition

220. The allegations of the proceeding paragraphs are repeated and incorporated herein by reference.

221. Defendants' use of the PEMCO Infringing Marks in connection with their fastener products constitutes common law trademark infringement of PennEngineering's PEM Family of Marks and common law unfair competition.

222.     Defendants' use of the PEMCO Infringing Marks in connection with their fastener products is likely to cause confusion among consumers as to source, sponsorship or affiliation of Defendants' goods.

223.     Defendants' use of the PEMCO Infringing Marks is being done with the intent, purpose and effect of procuring an unfair competitive advantage over PennEngineering by misappropriating the valuable goodwill developed by PennEngineering in its PEM Family of Marks.

**Count XXIV – Shoulder Flare Mark**
**Common Law Trademark Infringement and Unfair Competition**

224.     The allegations of the proceeding paragraphs are repeated and incorporated herein by reference.

225.     Defendants' use of the Shoulder Flare Mark in connection with their fastener products constitutes common law trademark infringement of PennEngineering's Shoulder Flare Mark and common law unfair competition.

226.     Defendants' use of the Shoulder Flare Mark in connection with their fastener products, including their Type PK11 and PK12 panel fastener, is likely to cause confusion among consumers as to source, sponsorship or affiliation of Defendants' goods.

227.     Defendants' use of the Shoulder Flare Mark is being done with the intent, purpose and effect of procuring an unfair competitive advantage over PennEngineering by misappropriating the valuable goodwill developed by PennEngineering in its Shoulder Flare Mark.

**Count XXV – Blue Locking Element Mark**
**Common Law Trademark Infringement and Unfair Competition**

228.    The allegations of the proceeding paragraphs are repeated and incorporated herein by reference.

229.    Defendants' use of the Blue Locking Element Mark in connection with their fastener products constitutes common law trademark infringement of PennEngineering's Blue Locking Element Mark and common law unfair competition.

230.    Defendants' use of the Blue Locking Element Mark in connection with their fastener products, including their Type PL and PLC hex nylon-inserted nuts, is likely to cause confusion among consumers as to source, sponsorship or affiliation of Defendants' goods.

231.    Defendants' use of the Blue Locking Element Mark is being done with the intent, purpose and effect of procuring an unfair competitive advantage over PennEngineering by misappropriating the valuable goodwill developed by PennEngineering in its Blue Locking Element Mark.

**Count XXVI – Pedestal Mark**
**Common Law Trademark Infringement and Unfair Competition**

232.    The allegations of the proceeding paragraphs are repeated and incorporated herein by reference.

233.    Defendants' use of the Pedestal Mark in connection with their fastener products constitutes common law trademark infringement of PennEngineering's Pedestal Mark and common law unfair competition.

234.    Defendants' use of the Pedestal Mark in connection with their fastener products, including their Type RA and RAS right angle fastener, is likely to cause confusion among consumers as to source, sponsorship or affiliation of Defendants' goods.

235.    Defendants' use of the Pedestal Mark is being done with the intent, purpose and effect of procuring an unfair competitive advantage over PennEngineering by misappropriating the valuable goodwill developed by PennEngineering in its Pedestal Mark.

**Count XXVII - SPOTFAST**
**Common Law Trademark Infringement and Unfair Competition**

236.    The allegations of the proceeding paragraphs are repeated and incorporated herein by reference.

237.    Defendants' use of the Mark SPOTFAST in connection with their fastener products constitutes common law trademark infringement of PennEngineering's mark SPOTFAST and common law unfair competition.

238.    Defendants' use of the mark SPOTFAST in connection with their fastener products, including their Type SF fasteners, is likely to cause confusion among consumers as to source, sponsorship or affiliation of Defendants' goods.

239.    Defendants' use of the mark SPOTFAST is being done with the intent, purpose and effect of procuring an unfair competitive advantage over PennEngineering by misappropriating the valuable goodwill developed by PennEngineering in its mark SPOTFAST.

**Count XXVIII - SNAPTOP**
**Common Law Trademark Infringement and Unfair Competition**

240.    The allegations of the proceeding paragraphs are repeated and incorporated herein by reference.

241.    Defendants' use of the mark SNAP-TOP in connection with their fastener products constitutes common law trademark infringement of PennEngineering's mark SNAPTOP and common law unfair competition.

242.     Defendants' use of the mark SNAPTOP in connection with their fastener products, including their Type PK-SSC standoffs, is likely to cause confusion among consumers as to source, sponsorship or affiliation of Defendants' goods.

243.     Defendants' use of the mark SNAPTOP is being done with the intent, purpose and effect of procuring an unfair competitive advantage over PennEngineering by misappropriating the valuable goodwill developed by PennEngineering in its mark SNAPTOP.

### Count XXIX - PEM
### Trademark Counterfeiting Under The Lanham Act

244.     The allegations of the proceeding paragraphs are repeated and incorporated herein by reference.

245.     Defendants' acts constitute trademark counterfeiting under Section 32 of the Lanham Act. 15 U.S.C. § 1114.

246.     Defendants, without authorization from PennEngineering, have used and are continuing to use spurious designations, including the PEMCO Infringing Marks, that are identical to, or substantially indistinguishable from, the mark PEM in interstate commerce.

247.     The foregoing acts of Defendants are intended to cause, have caused, and are likely to continue to cause confusion or mistake, or to deceive consumers, the public, and the trade into believing that Defendants' fastener products are genuine or authorized products of PennEngineering.

248.     On information and belief, Defendants have acted with knowledge of PennEngineering's ownership of the mark PEM with deliberate intention or willful blindness to unfairly benefit from the incalculable goodwill inherent in the mark PEM.

249.     For the foregoing, plaintiff is entitled to injunctive relief prohibiting Defendants from using the mark PEM or any marks identical and/or confusingly similar thereto for any

purpose, and to recover from Defendants all damages, including attorney fees, that plaintiff has

sustained and will sustain as a result of such infringing acts, and all gains, profits and advantages

obtained by Defendants as a result thereof, in an amount not yet known, as well as the costs of

this action pursuant to 15 U.S.C. § 1117(a), and treble damages pursuant to 15 U.S.C. § 1117(b),

and/or statutory damages pursuant to 15 U.S.C. § 1117(c).

**Count XXX – PEM Family of Marks**
**Trademark Counterfeiting Under The Lanham Act**

250.    The allegations of the proceeding paragraphs are repeated and incorporated herein

by reference.

251.    Defendants' acts constitute trademark counterfeiting under Section 32 of the

Lanham Act. 15 U.S.C. § 1114.

252.    Defendants, without authorization from PennEngineering, have used and are

continuing to use spurious designations, including the PEMCO Infringing Marks, that are

identical to, or substantially indistinguishable from, the PEM Family of Marks in interstate

commerce.

253.    The foregoing acts of Defendants are intended to cause, have caused, and are

likely to continue to cause confusion or mistake, or to deceive consumers, the public, and the

trade into believing that Defendants' fastener products are genuine or authorized products of

PennEngineering.

254.    On information and belief, Defendants have acted with knowledge of

PennEngineering's ownership of the PEM Family of Marks with deliberate intention or willful

blindness to unfairly benefit from the incalculable goodwill inherent in the PEM Family of

Marks.

255.     For the foregoing, plaintiff is entitled to injunctive relief prohibiting Defendants from using the PEM Family of Marks or any marks identical and/or confusingly similar thereto for any purpose, and to recover from Defendants all damages, including attorney fees, that plaintiff has sustained and will sustain as a result of such infringing acts, and all gains, profits and advantages obtained by Defendants as a result thereof, in an amount not yet known, as well as the costs of this action pursuant to 15 U.S.C. § 1117(a), and treble damages pursuant to 15 U.S.C. § 1117(b), and/or statutory damages pursuant to 15 U.S.C. § 1117(c).

**Count XXXI – Shoulder Flare Mark**
**Trademark Counterfeiting Under The Lanham Act**

256.     The allegations of the proceeding paragraphs are repeated and incorporated herein by reference.

257.     Defendants' acts constitute trademark counterfeiting under Section 32 of the Lanham Act. 15 U.S.C. § 1114.

258.     Defendants, without authorization from PennEngineering, have used and are continuing to use spurious designations, including the Shoulder Flare Mark on their Type PK11 and PK12 panel fasteners, that are identical to, or substantially indistinguishable from, the Shoulder Flare Mark in interstate commerce.

259.     The foregoing acts of Defendants are intended to cause, have caused, and are likely to continue to cause confusion or mistake, or to deceive consumers, the public, and the trade into believing that Defendants' fastener products are genuine or authorized products of PennEngineering.

260.     On information and belief, Defendants have acted with knowledge of PennEngineering's ownership of the Shoulder Flare Mark with deliberate intention or willful blindness to unfairly benefit from the incalculable goodwill inherent in the Shoulder Flare Mark.

261.   For the foregoing, plaintiff is entitled to injunctive relief prohibiting Defendants from using the Shoulder Flare Mark or any marks identical and/or confusingly similar thereto for any purpose, and to recover from Defendants all damages, including attorney fees, that plaintiff has sustained and will sustain as a result of such infringing acts, and all gains, profits and advantages obtained by Defendants as a result thereof, in an amount not yet known, as well as the costs of this action pursuant to 15 U.S.C. § 1117(a), and treble damages pursuant to 15 U.S.C. § 1117(b), and/or statutory damages pursuant to 15 U.S.C. § 1117(c).

### Count XXXII – Blue Locking Element Mark
### Trademark Counterfeiting Under The Lanham Act

262.   The allegations of the proceeding paragraphs are repeated and incorporated herein by reference.

263.   Defendants' acts constitute trademark counterfeiting under Section 32 of the Lanham Act. 15 U.S.C. § 1114.

264.   Defendants, without authorization from PennEngineering, have used and are continuing to use spurious designations, including their Blue Locking Element Mark on their Type PL and PLC hex nylon-inserted nuts, that are identical to, or substantially indistinguishable from the Blue Locking Element Mark in interstate commerce.

265.   The foregoing acts of Defendants are intended to cause, have caused, and are likely to continue to cause confusion or mistake, or to deceive consumers, the public, and the trade into believing that Defendants' fastener products are genuine or authorized products of PennEngineering.

266.   On information and belief, Defendants have acted with knowledge of PennEngineering's ownership of the Blue Locking Element Mark with deliberate intention or

willful blindness to unfairly benefit from the incalculable goodwill inherent in the Blue Locking Element Mark.

267.    For the foregoing, plaintiff is entitled to injunctive relief prohibiting Defendants from using the Blue Locking Element Mark or any marks identical and/or confusingly similar thereto for any purpose, and to recover from Defendants all damages, including attorney fees, that plaintiff has sustained and will sustain as a result of such infringing acts, and all gains, profits and advantages obtained by Defendants as a result thereof, in an amount not yet known, as well as the costs of this action pursuant to 15 U.S.C. § 1117(a), and treble damages pursuant to 15 U.S.C. § 1117(b), and/or statutory damages pursuant to 15 U.S.C. § 1117(c).

### Count XXXIII – Pedestal Mark
### Trademark Counterfeiting Under The Lanham Act

268.    The allegations of the proceeding paragraphs are repeated and incorporated herein by reference.

269.    Defendants' acts constitute trademark counterfeiting under Section 32 of the Lanham Act. 15 U.S.C. § 1114.

270.    Defendants, without authorization from PennEngineering, have used and are continuing to use spurious designations, including the Pedestal Mark of their Type RA and RAS steel threaded right angle fastener, that are identical to, or substantially indistinguishable from, the Pedestal Mark in interstate commerce.

271.    The foregoing acts of Defendants are intended to cause, have caused, and are likely to continue to cause confusion or mistake, or to deceive consumers, the public, and the trade into believing that Defendants' fastener products are genuine or authorized products of PennEngineering.

272.    On information and belief, Defendants have acted with knowledge of PennEngineering's ownership of the Pedestal Mark with deliberate intention or willful blindness to unfairly benefit from the incalculable goodwill inherent in the Pedestal Mark.

273.    For the foregoing, plaintiff is entitled to injunctive relief prohibiting Defendants from using the Pedestal Mark or any other marks identical and/or confusingly similar thereto for any purpose, and to recover from Defendants all damages, including attorney fees, that plaintiff has sustained and will sustain as a result of such infringing acts, and all gains, profits and advantages obtained by Defendants as a result thereof, in an amount not yet known, as well as the costs of this action pursuant to 15 U.S.C. § 1117(a), and treble damages pursuant to 15 U.S.C. § 1117(b), and/or statutory damages pursuant to 15 U.S.C. § 1117(c).

## Count XXXIV – SNAPTOP
## Trademark Counterfeiting Under The Lanham Act

274.    The allegations of the proceeding paragraphs are repeated and incorporated herein by reference.

275.    Defendants' acts constitute trademark counterfeiting under Section 32 of the Lanham Act. 15 U.S.C. § 1114.

276.    Defendants, without authorization from PennEngineering, have used and are continuing to use spurious designations, including the mark SNAP-TOP on their PK-SCC standoffs, that are identical to, or substantially indistinguishable from, the mark SNAPTOP in interstate commerce.

277.    The foregoing acts of Defendants are intended to cause, have caused, and are likely to continue to cause confusion or mistake, or to deceive consumers, the public, and the trade into believing that Defendants' fastener products are genuine or authorized products of PennEngineering.

278.     On information and belief, Defendants have acted with knowledge of PennEngineering's ownership of the mark SNAPTOP with deliberate intention or willful blindness to unfairly benefit from the incalculable goodwill inherent in the mark SNAPTOP.

279.     For the foregoing, plaintiff is entitled to injunctive relief prohibiting Defendants from using the mark SNAPTOP or any marks identical and/or confusingly similar thereto for any purpose, and to recover from Defendants all damages, including attorney fees, that plaintiff has sustained and will sustain as a result of such infringing acts, and all gains, profits and advantages obtained by Defendants as a result thereof, in an amount not yet known, as well as the costs of this action pursuant to 15 U.S.C. § 1117(a), and treble damages pursuant to 15 U.S.C. § 1117(b), and/or statutory damages pursuant to 15 U.S.C. § 1117(c).

### Count XXXV – SPOTFAST
### Trademark Counterfeiting Under The Lanham Act

280.     The allegations of the proceeding paragraphs are repeated and incorporated herein by reference.

281.     Defendants' acts constitute trademark counterfeiting under Section 32 of the Lanham Act (15 U.S.C. § 1114).

282.     Defendants, without authorization from PennEngineering, have used and are continuing to use spurious designations, including the mark SPOTFAST on their Type SF fasteners, that are identical to, or substantially indistinguishable from, the mark SPOTFAST in interstate commerce.

283.     The foregoing acts of Defendants are intended to cause, have caused, and are likely to continue to cause confusion or mistake, or to deceive consumers, the public, and the trade into believing that Defendants' fastener products are genuine or authorized products of PennEngineering.

284.     On information and belief, Defendants have acted with knowledge of PennEngineering's ownership of the mark SPOTFAST with deliberate intention or willful blindness to unfairly benefit from the incalculable goodwill inherent in the mark SPOTFAST.

285.     For the foregoing, plaintiff is entitled to injunctive relief prohibiting Defendants from using the mark SPOTFAST or any marks identical and/or confusingly similar thereto for any purpose, and to recover from Defendants all damages, including attorney fees, that plaintiff has sustained and will sustain as a result of such infringing acts, and all gains, profits and advantages obtained by Defendants as a result thereof, in an amount not yet known, as well as the costs of this action pursuant to 15 U.S.C. § 1117(a), and treble damages pursuant to 15 U.S.C. § 1117(b), and/or statutory damages pursuant to 15 U.S.C. § 1117(c).

## Count XXXVI – REELFAST
### Trademark Counterfeiting Under The Lanham Act

286.     The allegations of the proceeding paragraphs are repeated and incorporated herein by reference.

287.     Defendants' acts constitute trademark counterfeiting under Section 32 of the Lanham Act. 15 U.S.C. § 1114.

288.     Defendants, without authorization from PennEngineering, have used and are continuing to use spurious designations, including the mark REELFAST on their Type SMT panel fasteners, that are identical to, or substantially indistinguishable from, the mark REELFAST in interstate commerce.

289.     The foregoing acts of Defendants are intended to cause, have caused, and are likely to continue to cause confusion or mistake, or to deceive consumers, the public, and the trade into believing that Defendants' fastener products are genuine or authorized products of PennEngineering.

290.    On information and belief, Defendants have acted with knowledge of PennEngineering's ownership of the mark REELFAST with deliberate intention or willful blindness to unfairly benefit from the incalculable goodwill inherent in the mark REELFAST.

291.    For the foregoing, plaintiff is entitled to injunctive relief prohibiting Defendants from using the mark REELFAST or any marks identical and/or confusingly similar thereto for any purpose, and to recover from Defendants all damages, including attorney fees, that plaintiff has sustained and will sustain as a result of such infringing acts, and all gains, profits and advantages obtained by Defendants as a result thereof, in an amount not yet known, as well as the costs of this action pursuant to 15 U.S.C. § 1117(a), and treble damages pursuant to 15 U.S.C. § 1117(b), and/or statutory damages pursuant to 15 U.S.C. § 1117(c).

### Count XXXVII – U.S. Patent No. 7,374,381
### Patent Infringement Under 35 U.S.C. Section 271

292.    The allegations of the proceeding paragraphs are repeated and incorporated herein by reference.

293.    Defendants' acts constitute infringement of U.S. Patent No. 7,374,381 ("the '381 Patent") under 35 U.S.C. § 271.

294.    Defendants are inducing others to infringe the '381 Patent under 35 U.S.C. § 271(b) by making, using, selling and offering to sell in the United States, and importing into the United States their Type SF fasteners and instructing customers how to fasten two metal sheets in face-to-face contacting relationship.

295.    Defendants are infringing the '381 Patent under 35 U.S.C. § 271(c) by making, using, selling and offering to sell in the United States, and importing into the United States their Type SF fastener, which is a component of a patented apparatus.

296.     Defendants know that their Type SF fastener is especially made or especially adapted for use in fastening two metal sheets in face-to-face contacting relationship.

297.     Defendants know that their Type SF fastener is especially made or especially adapted for use in the assembly claimed in the '381 Patent.

298.     Defendants' Type SF fastener is not a staple article or commodity of commerce suitable for substantial noninfringing use.

299.     Defendants' infringement has been and continues to be willful and deliberate.

300.     Defendants' infringement of the '381 Patent has caused and is causing irreparable harm to PennEngineering.  PennEngineering is entitled to damages in the amount to be determined and at trial as a result of Defendants' infringement, to entry of an injunction against further infringement by Defendants, and to treble damages.

### Count XXXVIII – U.S. Patent No. 8,297,899
### Patent Infringement Under 35 U.S.C. Section 271

301.     The allegations of the proceeding paragraphs are repeated and incorporated herein by reference.

302.     Defendants' acts constitute infringement of U.S. Patent No. 8,297,899 ("the '899 Patent") under 35 U.S.C. § 271.

303.     Defendants are infringing the '381 Patent under 35 U.S.C. § 271(a) by making, using, selling and offering to sell in the United States, and/or importing into the United States their Type T pin fastener.

304.     Defendants' infringement has been and continues to be willful and deliberate.

305.     Defendants' infringement of the '899 Patent has caused and is causing irreparable harm to PennEngineering.  PennEngineering is entitled to damages in the amount to be

determined and at trial as a result of Defendants' infringement, to entry of an injunction against further infringement by Defendants, and to treble damages.

### Count XXXIX– U.S. Patent No. D461,705
### Patent Infringement Under 35 U.S.C. Section 271

306.     The allegations of the proceeding paragraphs are repeated and incorporated herein by reference.

307.     Defendants' acts constitute infringement of U.S. Patent No. D461,705 ("the '705 Patent") under 35 U.S.C. § 271.

308.     Defendants are infringing the '705 Patent under 35 U.S.C. § 271(a) by making, using, selling and offering to sell in the United States, and/or importing into the United States their Type TDO tie hooks.

309.     Defendants' infringement has been and continues to be willful and deliberate.

310.     Defendants' infringement of the '705 Patent has caused and is causing irreparable harm to PennEngineering.  PennEngineering is entitled to damages in the amount to be determined and at trial as a result of Defendants' infringement, to entry of an injunction against further infringement by Defendants, and to treble damages.

### Count XV – U.S. Patent No. 5,810,501
### Patent Infringement Under 35 U.S.C. Section 271

311.     The allegations of the proceeding paragraphs are repeated and incorporated herein by reference.

312.     Defendants acts constitute infringement of U.S. Patent No. 5,810,501 ("the '501 Patent") under 35 U.S.C. § 271.

313.    Defendants are infringing the '501 Patent under 35 U.S.C. § 271(a) by making, using, selling and offering to sell in the United States, and/or importing into the United States their Type RAA right angle fastener.

314.    Defendants' infringement has been and continues to be willful and deliberate.

315.    Defendants' infringement of the '501 Patent has caused and is causing irreparable harm to PennEngineering.  PennEngineering is entitled to damages in the amount to be determined and at trial as a result of Defendants' infringement, to entry of an injunction against further infringement by Defendants, and to treble damages.

### Count XVI– U.S. Patent No. 7,213,321
### Patent Infringement Under 35 U.S.C. Section 271

316.    The allegations of the proceeding paragraphs are repeated and incorporated herein by reference.

317.    Defendants acts constitute infringement of U.S. Patent No. 7,213,321 ("the '321 Patent") under 35 U.S.C. § 271.

318.    Defendants are infringing the '321 Patent under 35 U.S.C. § 271(a) by making, using, selling and offering to sell in the United States, and/or importing into the United States their SMT fastener.

319.    Defendants' infringement has been and continues to be willful and deliberate.

320.    Defendants' infringement of the '321 Patent has caused and is causing irreparable harm to PennEngineering.  PennEngineering is entitled to damages in the amount to be determined and at trial as a result of Defendants' infringement, to entry of an injunction against further infringement by Defendants, and to treble damages.

**WHEREFORE**, PennEngineering prays for:

## Concerning the Trademark Related Counts

a)     an award of damages for infringement of the mark PEM, the PEM Family of Marks, and the Six Other Marks including Defendants' profits, and that such award by trebled due to Defendants' willful and deliberate conduct;

b)     an injunction as set forth in the proposed Order accompanying PennEngineering's Motion for Preliminary Injunction, filed contemporaneously herewith and incorporated herein by reference;

c)     an award of costs and disbursements;

d)     an award of attorneys fees;

e)     punitive damages due to the willful, wanton and malicious conduct of Defendants;

f)     an award of statutory damages; and,

g)     such other and further relief as the court may deem just and proper;

## Concerning the Patent Counts

h)     a holding that each of the above-listed patents are valid, enforceable, and infringed by Defendants;

i)     an injunction as set forth in the proposed Order accompanying PennEngineering's Motion for Preliminary Injunction, filed contemporaneously herewith and incorporated herein by reference;

j)     an award of compensatory damages pursuant to 35 U.S.C. § 284;

k)     a finding that Defendants infringement of each of the above-listed patents is willful and an award of treble damages pursuant to 35 U.S.C. § 285;

l)      a finding that this is an exceptional case and an award of reasonable attorney fees and costs under 35 U.S.C. § 285; and,

m)      such other and further relief as the court may deem just and proper.

## JURY TRIAL

Plaintiff requests a trial by jury pursuant to Fed. R. Civ. P. 38(b) on all issues triable of right by a jury.

Respectfully submitted,

Ryder, Lu, Mazzeo & Konieczny LLC

Date: November 20, 2015

Joseph M. Konieczny, Sr. (Pa. 59,724)
Plymouth Woods Business Center
531 Plymouth Road, Suite 526, Door L
Plymouth Meeting, PA 19462
610-940-1962(voice)
610-940-1963 (fax)
jkonieczny@ryderlu.com.com

Attorneys for Penn Engineering & Manufacturing Corp.